Filed 5/25/22  In re K.K. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

|  |  |
|---|---|
| In re K.K., a Person Coming Under the Juvenile Court Law. | D080068 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,  Plaintiff and Respondent,  v.  M.E.,  Defendant and Appellant. | (Super. Ct. No. J520364) |

APPEAL from an order of the Superior Court of San Diego County, Ana L. Espana, Judge; Michael Imhoff, Commissioner.  Conditionally reversed with directions.

Donna B. Kaiser, under appointment by the Court of Appeal, for Defendant and Appellant.

Lonnie J. Eldridge, County Counsel, Caitlin E. Rae, Chief Deputy County Counsel, and Lisa M. Maldonado, Deputy County Counsel, for Plaintiff and Respondent.

Mother appeals an order terminating her parental rights for infant K.K. pursuant to Welfare and Institutions Code section 366.26.[1]  The sole issue on appeal is whether the San Diego County Health and Human Services Agency (Agency) and the juvenile court failed to conduct an adequate initial inquiry as required by the Indian Child Welfare Act (ICWA) regarding any potential Indian ancestry of the child.

Counsel for Mother and the Agency have conferred and agree that the Agency's investigation under the ICWA was inadequate, under the relevant statutory and decisional authority.  The parties filed a joint stipulation seeking the issuance of an immediate remittitur.  We accept the stipulation, conditionally reverse, and remand for the limited purpose of ensuring compliance with ICWA's requirements.

BACKGROUND

When M.E. (Mother) gave birth to K.K. in April 2020, both she and newborn K.K. tested positive for opiates.  K.K. suffered withdrawal symptoms and was admitted to the neonatal intensive care unit.  Although Mother denied drug use, methamphetamine and drug paraphernalia were found in her purse at the hospital.  Mother experienced complications after childbirth, was placed on a ventilator, sedated, and was cared for in the intensive care unit.  A physician believed that she had only months to live due to her health issues and that she was not capable of caring for the infant.

The Agency filed a petition alleging K.K. was a child within the jurisdiction of the juvenile court pursuant to section 300, subdivision (b)(1) because the child suffered or was at substantial risk of suffering serious physical harm or illness as a result of the parents' failure or inability to

---

[1]     Further undesignated statutory references are to the Welfare and Institutions Code.

2

protect or care for the child. The petition alleged the child tested positive for opiates and suffered withdrawal symptoms, that B.K. (Father) was incarcerated and Mother had an active criminal protective order protecting her from him. The Agency expressed concern that K.K. would not be cared for due to Mother's drug use and medical condition.

The Agency contacted maternal grandmother and paternal uncle about possible relative placement early in the case. There is no indication the Agency inquired about Native American heritage.

At the detention hearing on April 28, 2020, Mother and Father denied Native American heritage. The court deferred making a finding on the issue pending a paternity test. The court ordered the Agency to investigate and report to the court whether the child had Native American heritage. The court found that the Agency made a prima facie showing that K.K. was a child within the jurisdiction of the court under section 300, subdivision (b) and ordered K.K. detained.

In a June 9, 2020 jurisdiction/disposition report, the social worker stated ICWA did not apply because Mother denied Native American heritage or tribal connection. The report stated a full inquiry needed to be completed for Father. The worker identified several maternal relatives including maternal grandmother, maternal grandfather, maternal uncle and maternal aunt regarding relative placement and support.

At the jurisdiction hearing on July 9, 2020, the court made a true finding on the petition under section 300, subdivision (b)(1). The court found Father was K.K.'s biological father. It also found ICWA did not apply based on inquiry of the parents. It was not until later in August, however, that a social worker completed an ICWA inquiry with Father. He denied Native American heritage or tribal connection.

At the contested disposition hearing on August 25, 2020, the court ordered that K.K. be removed from the parents' care and placed in a licensed foster home. The court's minute order stated notice pursuant to ICWA was not required because reasonable inquiry had been made to determine whether the child is or may be an Indian child and the court had reason to know the child was not an Indian child. The court did not make this finding on the record during the hearing. Instead, the court incorporated by reference the Agency recommendations.

Over the following months, Mother denied drug use despite testing positive for amphetamines and methamphetamines on random drug tests. Although Mother expressed some insight into domestic violence issues with Father, she had ongoing contact with him. She made some progress with her case plan, but lacked insight into her substance abuse history and denied the risk and harm to K.K.

Between November 2020 and January 2021, the Agency contacted the paternal grandparents, a paternal uncle, a maternal aunt and a maternal uncle regarding concurrent planning. There is no indication the Agency conducted an ICWA inquiry with these individuals.

Mother struggled with maintaining services. After two substance abuse treatment programs declined to accept Mother due to her prescription for Ritalin and her claim that she had been sober for two years, she started participating in an outpatient substance abuse treatment program in December 2020. She did not, however, attend the required number of classes per week and did not acknowledge substance abuse. Mother tested positive for amphetamines and methamphetamine in October and November 2020, which she attributed to her Ritalin medication. A medical reviewer stated that Ritalin would not cause a false positive and that Mother tested positive

for a form of methamphetamine that was consistent with street drugs. Mother refused to test in December 2020. She denied alcohol use, but tested positive for alcohol several times in March 2021. She eventually acknowledged alcohol use in April 2021 saying she used alcohol to deal with panic attacks.

Mother initially engaged in a domestic violence group, but the group therapist reported that Mother missed nine sessions and had not attended since March 2021. The therapist was sympathetic to Mother's ongoing medical issues and was willing to continue Mother's services. Mother agreed to complete the last eight sessions.

Father remained incarcerated. Mother said she did not plan to have a relationship with Father when he was released, but she continued to communicate with him.

In April 2021, the court determined that Mother had made adequate progress toward alleviating or mitigating the causes necessitating K.K.'s placement and in complying with her case plan. The court continued her reunification services. The court terminated Father's reunification services after concluding that Father made no progress toward alleviating or mitigating the causes necessitating K.K.'s placement.

By the end of June 2021, Mother still had not completed her domestic violence therapy sessions. She continued to deny substance abuse and minimized her recent test results that were positive for alcohol, methamphetamine, and fentanyl. Her participation in substance abuse treatment was inconsistent. She had not mitigated the safety concerns that brought the family to the Agency's attention and she continued to lack insight into her drug history and the risk it posed to K.K.'s safety. Mother

stopped engaging in services after June 2021 and cancelled all meetings with the social worker.

The court terminated reunification services for Mother at the contested 12-month review hearing held on August 30, 2021, finding her progress was minimal.

In January 2022, Mother submitted a section 388 request for change of order requesting placement of K.K. with her. She stated that she was scheduled to begin outpatient treatment for substance abuse and a domestic violence support group, she had been engaged in mental health counseling, she was under the care of a psychiatrist, she had provided a negative drug test, and she was participating in substance abuse meetings. The Agency commended Mother for engaging in services "to get her life back on track," but indicated Mother had not fully addressed the protective issue that brought K.K. into the court's custody. Although her circumstances changed "slightly" it was not enough to warrant returning K.K. to her care since she was still in the beginning stages of recovery. The Agency believed the best interests of K.K. continued to be in the permanent plan of adoption. The court denied Mother's request on January 24, 2022.[2]

On February 3, 2022, at a contested section 366.26 hearing, the court determined that K.K. was adoptable and that adoption was in the best interest of K.K. The court terminated the parental rights of both parents. The court's minute order states the court found without prejudice that ICWA

---

[2] Mother's notice of appeal indicated she was appealing this order. Because the opening brief does not challenge the substance of this order, we deem the appeal abandoned. (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956.)

did not apply to this proceeding.  However, the court did not make this finding on the record.

## DISCUSSION

Congress enacted ICWA to address concerns regarding the separation of Native American children from their tribes through adoption or foster care placement.  (*In re Isaiah W.* (2016) 1 Cal.5th 1, 7.)  Under California law adopted pursuant to ICWA, the juvenile court and the Agency have an "affirmative and continuing duty to inquire" whether a child "is or may be an Indian child."  (§ 224.2, subd. (a); *Isaiah W.*, at p. 9.)

"[S]ection 224.2 creates three distinct duties regarding ICWA in dependency proceedings.  First, from the Agency's initial contact with a minor and his family, the statute imposes a duty of inquiry to ask all involved persons whether the child may be an Indian child.  (§ 224.2, subds. (a), (b).)  Second, if that initial inquiry creates a 'reason to *believe*' the child is an Indian child, then the Agency 'shall make *further inquiry* regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.'  (*Id.*, subd. (e), italics added.)  Third, if that further inquiry results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply.  (See § 224.2, subd. (c) [court is obligated to inquire at the first appearance whether anyone 'knows or has reason to know that the child is an Indian child']; *id.*, subd. (d) [defining circumstances that establish a 'reason to know' a child is an Indian child]; § 224.3 [ICWA notice is required if there is a 'reason to know' a child is an Indian child as defined under § 224.2, subd. (d)].)"  (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052.)

The parties agree, and we concur, that the Agency did not comply with its initial duty of inquiry in this case by failing to inquire of the child and

available extended family members regarding any potential Indian ancestry. (§ 224.2, subds. (a) & (b); Cal. Rules of Court, rule 5.481(a)(1).)  The Agency interviewed many relatives as part of its investigation and efforts to explore relative placement, including maternal grandparents, a maternal uncle, a maternal aunt, paternal grandparents, and a paternal uncle.  However, there is no indication in the record that any of these extended family members were asked about potential Native American ancestry for the child.  Before the juvenile court can find that the ICWA does not apply, it must make a finding that "due diligence as required in this section have been conducted." (§ 224.2, subd. (i)(2).)  The record does not show that the juvenile court made this finding.

Before reversing or vacating a judgment based upon a stipulation of the parties, an appellate court must find "both of the following:  [¶]  (A) There is no reasonable possibility that the interests of nonparties or the public will be adversely affected by the reversal.  [¶]  (B) The reasons of the parties for requesting reversal outweigh the erosion of public trust that may result from the nullification of a judgment and the risk that the availability of stipulated reversal will reduce the incentive for pretrial settlement."  (Code Civ. Proc., § 128, subd. (a)(8).)

The present case involves reversible error because the parties agree, and we concur, that the Agency failed to comply with the ICWA and related California provisions and "that there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 744; *In re Antonio R.* (2022) 76 Cal.App.5th 421, 435.)  Because this case would be subject to reversal to permit compliance with the ICWA and corresponding California statutes and rules absent the parties' stipulation, a stipulated remand advances the

8

interests identified by Code of Civil Procedure section 128, subdivision (a)(8). (See *In re Rashad H.* (2000) 78 Cal.App.4th 376, 379-382.)

DISPOSITION

The orders issued at the February 3, 2022 contested section 366.26 hearing are conditionally reversed and the matter is remanded to the juvenile court with directions that within 30 days of the remittitur the Agency must file a report demonstrating its compliance with the inquiry provisions of the ICWA and section 224.2, subdivision (b), and, if required, conduct further inquiry under section 224.2, subdivision (e). Within 45 days of the remittitur, the juvenile court must conduct a hearing to determine if the Agency's investigation satisfied its affirmative duty to investigate. The juvenile court has the discretion to adjust these time periods on a showing of good cause.

If neither the Agency nor the juvenile court has reason to believe or to know that K.K. is an Indian child, the orders issued at the February 3, 2022 contested section 366.26 hearing shall be reinstated. Alternatively, if after completing the inquiry the Agency or the juvenile court has reason to believe that K.K. is an Indian child, the court shall proceed accordingly. The remittitur shall issue immediately.

IRION, J.

WE CONCUR:


HUFFMAN, Acting P. J.


O'ROURKE, J.